UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT MEAKIN,<br><br>    Plaintiff,<br><br>    v.<br><br>CALIFORNIA FIELD IRONWORKERS PENSION TRUST, et al.,<br><br>    Defendants. | Case No. 5:16-cv-07195-EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 20, 27 |

Plaintiff Robert Meakin ("Plaintiff") brings this action against the Board of Trustees of the California Ironworkers Field Pension Trust ("Trustees") and the California Field Ironworkers Pension Trust ("Pension Fund") (collectively, "Defendants"), seeking declaratory, injunctive, and monetary relief under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"). Presently before the Court are the parties' competing motions for summary judgment. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for decision without oral argument and VACATES the hearing set for January 18, 2018. For the reasons set forth below, the Court GRANTS Defendants' motion for summary judgment and DENIES Plaintiff's motion for summary judgment.

**I.    BACKGROUND**

The Pension Fund provides retirement and related benefits to field workers in the building and construction trades in California. It is a multiemployer plan as defined by § 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), and as used in §§ 515 and 502(g)(2) of ERISA, 29 U.S.C.

Case No.: 5:16-cv-07195-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
1

§ 1145, 1132(g)(2). Plaintiff's Response to Defendants' Statement of Facts ("Defs' SOF"), Dkt. No.27-3, No. 4. It is also a tax-qualified plan under § 401(a) of the Internal Revenue Code ("IRC"). Defs' SOF 12.[1] According to its Restatement of the Rules and Regulations of the Pension Plan for the California Ironworkers Field Pension Trust ("Plan"), it "is intended to comply with [ERISA] and with the requirements for tax qualification under the Internal Revenue Code and all regulations there under, and is to be interpreted and applied consistent this this intent." Declaration of Leanne Vance ("Vance Decl."), Ex. 1 ("Restatement"), Dkt. No. 20-3, at Preamble.

Plaintiff is a 56-year old male who has worked in the building and construction trades since the age of 18. Defendants' Response to Plaintiff's Statement of Facts ("Pl.'s SOF"), Dkt. No. 30-2, Nos. 1, 2; Defs' SOF 13, 17. He has participated in the Plan throughout his career. *See* Pl.'s SOF 1, 2.

On July 18, 2008, having reached an age and service credit combination that satisfied the Plan's "Golden 85" rule,[2] Plaintiff applied for a service pension with a proposed effective date of August 1, 2008. Pl.'s SOF 3, 4, 6; Complaint ("Compl."), Dkt. No. 1, at ¶ 12. At the time, he was working as a Superintendent at C.E. Toland & Sons, a position which was covered by the Plan and through which Plaintiff accrued service credits. Compl. ¶¶ 10, 12. Plaintiff indicated in his application that his last day of work as superintendent would be July 31, 2008.[3] Pl.'s SOF 5. The Pension Fund Office approved his application. Vance Decl., Dkt. No. 20-2, at ¶ 11.

On July 31, 2008, Plaintiff left his position as Superintendent. Compl. ¶ 12. However, Plaintiff did not stop working at C.E. Toland & Sons; instead, the next day, on August 1, 2008,

---

[1] Unless otherwise noted, the Court will refer to facts by number. Here, for example, "Defs' SOF 12" refers to fact no. 12 in Plaintiff's Response to Defendants' Statement of Undisputed Facts (Dkt. No. 27-3).

[2] Under the Plan's "Golden 85" rule, an employee with a combined age and years of service of 85 or greater can apply for a service pension without reaching normal retirement age. Pl.'s SOF 3; *see* Restatement, Article III, Section 15. As of July 31, 2008, Plaintiff had accrued 40.25 service credits and was 47 years in age. Pl.'s SOF 1, 2.

[3] Initially, when Plaintiff submitted his application on July 18, 2008, he indicated that his last day of work as superintendent would be August 1, 2008. Pl.'s SOF 5. However, on July 29, 2008, Plaintiff corrected his application to indicate that his last day as superintendent would be July 31, 2008. *Id*.

Case No.: 5:16-cv-07195-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
2

Plaintiff changed roles and started working as a Safety Director and Estimator. Pl.'s SOF 7. Unlike Superintendent, the role of Safety Director and Estimator was not covered by the Plan and, as such, Plaintiff could not accrue service credits through his work in this role. Pl.'s SOF 7; Compl. ¶ 13. On September 9, 2008, Plaintiff submitted an application to the Pension Fund to work as a retiree as a Safety Director and Estimator at C.E. Toland & Sons. Pl.'s SOF 6; Vance Decl., Ex. 3, Dkt. No, 20-5. The Pension Fund approved Plaintiff's application on September 17, 2008. Pl.'s SOF 8; Vance Decl., Ex. 4, Dkt. No. 20-6.

Ordinarily, for participants such as Plaintiff who have not reached "Normal Retirement Age," the Plan requires that

> [t]o be considered retired and entitled to a pension under this Plan . . . a Pensioner *must withdraw completely and refrain from any employment or activity in the building and construction industry*, including, but not limited to any employment with any trust fund which provides benefits for persons employed in the building and construction industry wherever such employment or activity may be performed.

Restatement, Article VIII, Section 8(a)(iii) (emphasis added). However, the Plan also carves out a limited exception where retirees can continue to work in the "building and construction industry" in limited circumstances, namely:

> Only upon advance job specific application and specific approval from the Board of Trustees, employment in Non-Covered Employment as described in paragraphs (b) and (c) of this subsection will not be considered disqualifying for purposes of concurrently receiving pension benefits before Normal Retirement Age if the pensioner:
> (a) is at least age 45 and has earned at least 15 pension credits from this Plan, and,
> (b) is employed by a Governmental Agency or an Employer bound to make contributions to this Trust under the Collective Bargaining Agreement (who has posted the applicable Union Surety Bond If based in California or Nevada), and,
> (c) performs the work of a detailer, estimator, provided said job takes place principally in the Employer's office, and not in the field, or sales person or clerical for said Employer, *or as a safety officer* for said Employer, or acts as an Inspector for a Governmental Agency; and,
> (d) that in the case of a disability pensioner, who retired on a Disability Pension based on medical evidence prior to September 1, 1993, the physical requirements of such work does not negate the original medical findings qualifying such person for pension.

*Id*., Article VIII, Section 8(a)(iv) (emphasis added). Thus, even though he had not "withdraw[n]

completely and refrain[ed] from any employment . . . in the building and construction industry," Plaintiff appeared to fall within this exception of non-disqualifying work because, as Safety Director and Estimator for C.E. Toland & Sons, he "perform[ed] the work of . . . a safety officer." *See id.*, Article VIII, Section 8(a). Plaintiff continued to receive pension benefits through March 2014. Pl.'s SOF 9.

At some point before or in 2011, the Pension Fund determined that it needed to change its practices with respect to Section 8(a)(iv). In or after 2011, the Pension Fund filed a Voluntary Compliance Plan ("VCP") to the Internal Revenue Service ("IRS"), disclosing that Section 8(a)(iv) was being improperly administered such that some participants were receiving "in-service" distributions of pension benefits in violation of § 401(a) of the IRC and certain of its implementing regulations. Pl.'s SOF 12; Declaration of James Keenley ("Keenley Decl."), Dkt. No. 27-1, Ex. 7 ("VCP"), at VCP-009-11. Section 401(a) sets forth the conditions under which a trust is a "qualified trust" such that employer contributions are not subject to taxation. 26 U.S.C. § 401(a). According to its implementing regulations, "[a] pension plan within the meaning of section 401(a) is a plan established and maintained by an employer primarily to provide systematically for the payment of definitely determinable benefits to his employees over a period of years, usually for life, after retirement." 26 C.F.R. § 1-401-1(b)(1)(i). According to the VCP, Section 8(a)(iv) permitted participants to commence their pensions while they were working in non-covered employment, and, as such, allowed for the payment of benefits that were not "after retirement" within the meaning of 26 C.F.R. § 1-401-1(b)(1)(i). VCP at VCP-009-14.

The VCP identified that 290 retirees had received these improper distributions beginning sometime between 1990 and June 1, 2007, and that 58—which included Plaintiff—had received these improper distributions beginning sometime after June 1, 2007. VCP at VCP-012; Pl.'s SOF 15. To remedy this, the VCP proposed that, for the 58 retirees who had begun receiving them after June 1, 2007, any retirees who were under age 62 at the time of retirement and who started working less than three months after their effective retirement date would have their pensions

United States District Court
Northern District of California

terminated. VCP at VCP-018-21; Pl.'s SOF 18. The VCP proposed that no action be taken for the 290 retirees who began receiving distributions before or on June 1, 2007. VCP at VCP-018. To explain this difference in treatment, the VCP pointed to "clarifications in the law [that] were resolved by final regulations issued . . . on May 22, 2007" and the fact that calculating overpayment gets more difficult with the passage of time. *Id*. at VCP-018.

In January 2014, the IRS issued a compliance statement accepting the VCP. VCP at VCP-001. The compliance statement stated that the "compliance statement should not be construed as affecting the rights of any party under any other law, including Title I of [ERISA]." VCP at VCP-005; Pl.'s SOF 24.

Following the IRS's acceptance of the VCP, on February 7, 2014, the Pension Fund sent Plaintiff a letter notifying him that he had been receiving pension benefits in error and that his pension payments would be stopped beginning April 1, 2014. Pl.'s SOF 25; Vance Decl., Ex. 6, Dkt. No. 20-8. The letter indicated that Plaintiff's pension payments would resume either (1) when Plaintiff reached the age of 62 or (2) "provide[d] . . . proof of having had a severance from employment," whichever came first. Vance Decl., Ex. 6, Dkt. No. 20-8, at MeakinAR000012. As outlined in the letter, Plaintiff stopped receiving pension payments on April 1, 2014. Pl.'s SOF 9.

Plaintiff appealed to the Trustees on June 6, 2014. Pl.'s SOF 27; Vance Decl., Ex. 7, Dkt. No. 20-9. The Trustees rejected Plaintiff's appeal on March 14, 2014. Pl.'s SOF 29; Vance Decl., Ex. 8, Dkt. No. 20-10. After another unsuccessful attempt to challenge the Trustees' action in 2016, *see* Vance Decl., Exs. 9 and 10, Dkt. Nos. 20-11 and 20-12, Plaintiff filed the instant suit.

## II. LEGAL STANDARDS

Ordinarily, a motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Addisu v. Fred Meyer, Inc*., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the

Case No.: 5:16-cv-07195-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

## III.    DISCUSSION

As noted above, Plaintiff brings a claim for benefits pursuant to § 502(a)(1)(B) of ERISA on the theory that, since August 1, 2008, he has been entitled to pension benefits under the Plan (including, especially, Article VIII, Section 8(a)(iv)). *See* Compl. ¶¶ 23-27. As such, Plaintiff seeks allegedly past-due benefits and related costs and fees, as well as declaratory and injunctive relief protecting against future suspensions of payments. *See id*. In moving for summary judgment, Defendants argue that there is no dispute of material fact that the Trustees have discretionary authority to interpret and administer the plan, and they did not abuse this discretion here. Dkt. No. 20 ("Defs' Mot."). In cross-moving for summary judgment, Plaintiff argues that there is no dispute of material fact that he is entitled to payments under the Plan. Dkt. No. 27 ("Pl.'s Cross-Mot."). For the reasons discussed below, the Court agrees with Defendants.

### A.    An Abuse of Discretion Standard Applies to the Trustees' Actions

ERISA allows a beneficiary or plan participant to sue in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see also CIGNA Corp. v. Amara*, 563 U.S. 421, 425 (2011); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). A claim of denial of benefits in an ERISA case "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to

Case No.: 5:16-cv-07195-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

6

determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 629 (9th Cir. 2009). If the plan confers such discretion, then the denial is reviewed for an abuse of discretion. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 110-11 (2008).

Article VIII ("Application, Benefit Payments and Retirement"), Section 3 of the Plan provides: "The Trustees shall, subject to the requirements of the law, be the sole judges of the standard of proof required in any case and the application and interpretation of this Plan, and decisions of the Trustees shall be final and binding on all parties." Restatement, Article VIII, Section 3. This language unambiguously confers discretionary authority on the Trustees to construe and administer the terms of the Plan. As such, abuse of discretion governs the Court's review of the Trustees' decision to stop pension payments.

### B. The Trustees Did Not Abuse Their Discretion in Suspending Plaintiff's Pension Payments

Under the abuse of discretion standard, "a plan administrator's decision 'will not be disturbed if reasonable.'" *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929 (9th Cir. 2012) (quoting *Conkright v. Frommert*, 559 U.S. 506, 512 (2010)). Correspondingly, "an administrator's denial of benefits must be upheld 'if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith.'" *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 957-58 (9th Cir. 2016) (quoting *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1113 (9th Cir. 2000)). "The analysis is not based on 'whose interpretation of the plan documents is most persuasive, but whether the [adminstrator's] interpretation is unreasonable.'" *Id.* (quoting *Canseco v. Constr. Laborers Pension Tr.*, 93 F.3d 600, 606 (9th Cir. 1996) (internal quotation marks omitted)). A plan administrator's decision was unreasonable if it was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts of the record." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

Here, the Trustees defend their decision to stop Plaintiff's pension payments on their belief

Case No.: 5:16-cv-07195-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
7

that these distributions were in violation of ERISA and the IRC.[4] The Court finds that, at least with respect to the IRC, the Trustees' interpretation of the Plan's terms (and, in turn, corresponding action taken with respect to Plaintiff) was reasonable.

As an initial matter, the Court notes that there does not appear to be a dispute that, at least for the time running from September 17, 2008 when Plaintiff had received approval to work as a retiree, Plaintiff satisfied the terms of Section 8(a)(iv). Plaintiff was "at least age 45" (he was 47) and had "earned at least 15 pension credits" (he had earned 40.25). Pl.'s SOF 1, 2; Defs' SOF 16. Plaintiff was employed by an "Employer bound to make contributions to [the Pension Fund]" (C.E. Toland & Sons). *See* Pl.'s SOF 7. Plaintiff also worked as a "safety officer" for that employer. *See id*. Section 8(a)(iv)(d) did not apply, as Plaintiff was not a disability pensioner. Thus, Plaintiff satisfied the requirements of Section 8(a)(iv).

Nevertheless, the Trustees were not bound to read and apply Section 8(a)(iv) in isolation. An ERISA plan is a contract, and in interpreting its terms, "Congress intended that courts apply contract principles derived from state law but be guided by the policies expressed in ERISA and other federal labor laws." *Richardson v. Pension Plan of Bethlehem Steel Corp*., 112 F.3d 982, 985 (9th Cir. 1997). Accordingly, "terms in an ERISA plan should be interpreted 'in an ordinary and popular sense as would a [person] of average intelligence and experience.'" *Gilliam v. Nevada Power Co*., 488 F.3d 1189, 1194 (9th Cir. 2007) (quoting *Richardson*, 112 F.3d at 985). "When disputes arise, courts should first look to explicit language of the agreement to determine, if possible, the clear intent of the parties. The intended meaning of even the most explicit language can, of course, only be understood in the light of the context that gave rise to its inclusion." *Id*. (internal quotation marks omitted). "Moreover, we endeavor to interpret each

---

[4] The Trustees also make the argument that they were additionally justified in stopping pension payments because Plaintiff did not obtain "advance job specific application and specific approval from the Board of Trustees" as required by Section 8(a)(iv). Defs' Mot. 13. Plaintiff argues in response that, because the Board ultimately approved his application, this argument was waived. Pl.'s Cross-Mot. 24. Because, as discussed below, the Trustees' determination that Plaintiff was not entitled to receive pension payments while he was still working for C.E. Toland & Sons was reasonable and therefore not an abuse of discretion, the Court need not reach this argument.

Case No.: 5:16-cv-07195-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
8

provision consistent 'with the entire document such that no provision is rendered nugatory.'" *Id*. (quoting *Richardson*, 112 F.3d at 985). An interpretation which gives a reasonable, lawful and effective meaning to all the terms is preferred to one which leaves any part unreasonable or of no effect. *Musto v. Am. Gen. Corp.*, 861 F.2d 897, 906 (6th Cir. 1988).

Here, it was reasonable for the Trustees to look outside the isolated language of Section 8(a)(iv) and endeavor to "underst[an]d [it] in the light of the context that gave rise to its inclusion." *Gilliam*, 488 F.3d at 1194. Specifically, the Preamble of the Plan states that it "is intended to comply with [ERISA] and with the requirements for tax qualification under the [IRC] and all regulations there under, and is to be interpreted and applied consistent this this intent." Restatement, Preamble. Thus, it was reasonable for the Trustees to understand Section 8(a)(iv) as intended to be applied in a manner consistent with relevant law. This conclusion becomes stronger in light of the fact that, as fiduciaries within the meaning of § 3(21)(A) of ERISA, the Trustees had duty to ensure that the Plan complied with relevant law. *See* 29 U.S.C. § 1104(a)(1)(D) ("a fiduciary shall discharge his duties with respect to a plan . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III"). In addition, as part of their responsibility to "discharge [their] duties . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," 29 U.S.C. § 1104(a)(1)(B), the Trustees had strong reason (if not obligation) to comply with § 401(a) to preserve the tax-exempt status of the Plan. Accordingly, it was reasonable for the Trustees to not interpret Section(a)(iv) in insolation.

Having determined that interpreting Section8(a)(iv) in context was reasonable, the question then becomes whether the specific conclusions that the Trustees reached about the meaning of the IRC and how it impacted Section 8(a)(iv) were reasonable. The Court finds that they were. First, it was reasonable for the Trustees to conclude that, in order to maintain a tax-exempt status under

Case No.: 5:16-cv-07195-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

9

§ 401(a), a plan could not allow pension payments to individuals who had not had a severance from their employment. According to IRS regulations, "[a] pension plan within the meaning of section 401(a) is a plan . . . to provide for the payment of definitely determinable benefits . . . after retirement." 26 C.F.R. § 1.401-1(b)(1)(i). "A pension plan does not qualify [as tax-exempt under § 401(a)] if it permits distributions of the employer's contributions or increments thereon prior to severance of employment or termination of the plan." Internal Revenue Service Ruling 71-437 (Jan. 1, 1971). In addition, in a nonbinding private ruling letter, the IRS specifically opined that simply changing jobs under the same employer—as Plaintiff did here—does not qualify as retirement:

> We have concluded that employees who "retire" on one day in order to qualify for a benefit under the Plan, with the explicit understanding between the employee and employer that they are not separating from service with the employer, are not legitimately retired. Accordingly because these employees would not actually separate from service and cease performing services for the employer when they "retire" these "retirements" would not constitute a legitimate basis to allow participants to qualify for early retirement benefits (which are then immediately suspended.) Such "retirements" will violate section 401(a) of the Code and result in disqualification of the Plan under section 401(a) of the Code.

I.R.S. P.L.R. 201147038 (Nov. 25, 2011). Although not binding on the Trustees, this letter ruling at least provides additional support for the Trustees' view. Accordingly, it was not unreasonable for the Trustees to interpret the IRC as not permitting the Plan to remain tax-exempt if it permitted pension payments without severance from employment.

It was also reasonable for the Trustees, in view of this interpretation, to stop pension payments to Plaintiff. Indeed, this flows naturally from the Trustees' interpretation of § 401(a)—if tax-exempt status under § 401(a) prohibited pension payments to participants who had not had a severance from employment, then the Trustees had to stop Plaintiff's pension payments until Plaintiff met this requirement. It was also reasonable for the Trustees to prioritize protecting the Plan's tax-exempt status over avoiding disruption of Plaintiff's pension payments. As fiduciaries, the Trustees were obligated to "discharge [their] duties . . . for the exclusive purpose of providing benefits to participants and their beneficiaries; and defraying reasonable expenses of administering

the plan." 29 U.S.C. § 1104(a)(1)(A). It seems highly unlikely that jeopardizing tax-exempt status for the whole in order to permit continued pension payments for a small number of individuals (here, 58) would be consistent with this obligation, and it was not unreasonable for the Trustees to conclude the same.

Further, the fact that the Trustees' course of action required a deviation from their practices in the past (i.e., permitting pension payments for non-severed retirees vs. not permitting pension payments for non-severed retirees) does not, in and of itself, render the Trustees' decision unreasonable. Indeed, the Ninth Circuit and other courts have upheld plan administrator decisions that deviated from a past course of action. *See, e.g., Oster v. Barco of California Employees' Ret. Plan*, 869 F.2d 1215, 1219 (9th Cir. 1988) (finding no abuse of discretion where "[t]he Committee's decision to modify its policy appears to be reasonable"); *see also Serbanic v. Harleysville Life Ins. Co.*, 325 F. App'x 86, 91 (3d Cir. 2009) ("We do not suggest that a plan administrator is precluded from reconsidering an award of benefits to correct its own error, so long as the plan administrator specifically justifies the change as the correction of an earlier mistake and the record supports that decision.").

Finally, the fact that the Trustees only suspended pension payments for retirees (58 in total, including Plaintiff) who started receiving pension payments after June 1, 2007 but did not suspend payments for retirees (290 in total) who started receiving payments before that date does not make their decision unreasonable. In the VCP, the Trustees provided a rationale for this difference in treatment: it would be too unwieldy to unwind affected payments from the beginning of time, and since there were "clarifications in the law [that] were resolved by final regulations issued . . . on May 22, 2007," June 1, 2007 provided a reasonable point of demarcation. *See* VCP at VCP-018. Nothing about this is "illogical, [] implausible, or [] without support in inferences that may be drawn from the facts of the record." *Salomaa*, 642 F.3d at 676 (quoting *Hinkson*, 585 F.3d at 1262). Accordingly, the Court must defer to the Trustees' judgment.

In sum, because the Trustees' interpretation of the IRC, its impact on Section 8(a)(iv), and

its application to Plaintiff were reasonable, the Trustees did not abuse their discretion in suspending Plaintiff's pension payments.

Plaintiff's arguments to the contrary are not persuasive. For example, Plaintiff relies heavily on the isolated language in Section 8(a)(iv) and argues that this is sufficient to entitle him to pension payments. Pl.'s Cross-Mot. 10-12. However, as discussed above, Section 8(a)(iv) is but one provision of the Plan and, at least under the circumstances here, it was not unreasonable for the Trustees to interpret it in a broader context. As another example, Plaintiff challenges the Trustees' legal conclusion that the IRC and ERISA require complete separation from employment. Pl.'s Cross-Mot. 12-17. Instead, Plaintiff contends, it should be sufficient that he stopped working in a position that was covered by the Plan—whether or not he remained with the same employer or started work with a different employer in a non-covered position should not matter. *Id*. However, as discussed above, the Trustees' interpretation of the IRC as it related to their Plan was reasonable. It is possible that other plan administrators, in other contexts, could reach different conclusions about what the IRC required to maintain their tax-exempt status. This, however, is not the standard. As long as the Trustees' decision was reasonable—as the Court has determined here—the Court cannot disturb it. As a final example, Plaintiff challenges the necessity of the Trustees' actions—Plaintiff points out that the VCP was a voluntary procedure and that the Pension Fund would not cease to exist simply because it does not qualify as tax-exempt under § 401(a). Pl.'s Cross-Mot. at 17-20. This, however, ignores the fact that the Trustees are fiduciaries and, in light of their obligations under 29 U.S.C. § 1104, the actions they took to preserve the tax-exempt status of the trust was not unreasonable. As such, this argument also fails.

Accordingly, the Court finds that the Trustees were reasonable in concluding that Plaintiff's pension payments ran afoul of the IRC. For at least this reason, they did not abuse their discretion is suspending these payments. The Court need not reach whether ERISA or other provisions within the Plan itself also provide support for the Trustees' decision, and declines to do so here.

## C. Plaintiff is Not Entitled to Relief Under an Equitable Estoppel Theory

In addition to relying on the terms of the Plan, Plaintiff also contends that he is entitled to continued pension payments under a theory of equitable estoppel. In the context of its application under ERISA, equitable estoppel is a matter of federal common law. 29 U.S.C. § 1132(a)(3). Generally, for equitable estoppel to apply, "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014) (quoting *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821 (9th Cir.1992)). In addition, "to maintain a federal equitable estoppel claim in the ERISA context, the party asserting estoppel must not only meet the traditional equitable estoppel requirements, but must also allege: (1) extraordinary circumstances; (2) 'that the provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect'; and (3) that the representations made about the plan were an interpretation of the plan, not an amendment or modification of the plan." *Id.* at 957 (quoting *Spink v. Lockheed Corp.*, 125 F.3d 1257, 1262 (9th Cir. 1997)).

Plaintiff's arguments are unavailing. Specifically, Plaintiff has failed to raise a genuine issue of material fact at least with respect to the extraordinary circumstances element. With respect to this element, the Ninth Circuit has said:

> Although we have not defined "extraordinary circumstances" in this context, courts have held that making "a promise that the defendant reasonably should have expected to induce action or forbearance on the plaintiff's part," *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 86 (2d Cir. 2001), as well as "conduct suggesting that [the employer] sought to profit at the expense of its employees," a "showing of repeated misrepresentations over time," or evidence "that plaintiffs are particularly vulnerable," *Kurz v. Phila. Elec. Co.*, 96 F.3d 1544, 1553 (3d Cir. 1996), can constitute extraordinary circumstances.

*Id.* Plaintiff has not made any allegations or pointed to any evidence that this case involves anything close to the types of circumstances identified by the Ninth Circuit. There is no evidence that the Trustees sought to profit at the expense of Plaintiff, that the Trustees made repeated

Case No.: 5:16-cv-07195-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
13

misrepresentations, or that Plaintiff was particularly vulnerable. Instead, construing the facts in the light most favorable to Plaintiff, it appears that the Trustees simply discovered, over the course of administering the Plan and iterating on its review of relevant law, that it was not in compliance and took steps it deemed necessary to correct this. Indeed, the fact that the changes in how the Trustees administered Section 8(a)(iv) came about through their voluntary participation in standard IRS compliance procedures underscores the ordinariness (not extraordinariness) of the circumstances surrounding this case. Accordingly, Plaintiff is not entitled to relief based on a theory of equitable estoppel.

## IV. CONCLUSION

The Trustees did not abuse their discretion under the terms of the Plan. The law and undisputed facts establish that the Trustees' interpretation of the Plan and its application to Plaintiff were reasonable. Accordingly, Defendants' motion for summary judgment is GRANTED, and Plaintiff's motion for summary judgment is DENIED.

The Court notes that, although the instant order disposes of Plaintiff's first claim for relief (Compl. ¶¶ 23-27), Plaintiff's second claim for relief (Compl. ¶¶ 28-30) remains pending. According to Defendants' motion, Plaintiff's counsel has indicated that Plaintiff will no longer pursue this claim and a stipulation of dismissal is forthcoming. Defs' Mot. at 2 n.3. However, because no stipulation has been received, this file remains open and the Joint Trial Setting Conference scheduled for February 15, 2018 remains on calendar.

**IT IS SO ORDERED.**

Dated: January 12, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:16-cv-07195-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
14